# In the United States Court of Federal Claims

No. 16-544 C

Filed: August 16, 2016*

| | |
|---|---|
| ***************************************** | Administrative Procedures Act |
| * | ("APA"), 5 U.S.C. § 706; |
| T.W. LAQUAY MARINE, LLC, * | Bid Protest Jurisdiction, 28 U.S.C. § |
| * | 1491; |
| Plaintiff, * | Competition In Contracting Act |
| * | ("CICA"), |
| v. * | 10 U.S.C. § 2304(a); |
| * | 31 U.S.C. § 3551; |
| THE UNITED STATES, * | Federal Acquisition Regulation |
| * | ("FAR"), |
| Defendant, * | FAR § 1.403 (Individual |
| * | Deviations); |
| and * | FAR § 15.101-2 (Lowest Priced |
| * | Technically Acceptable Source |
| JAR ASSETS, LLC, * | Selection Process); |
| * | FAR § 15.303(b)(6) |
| Defendant-Intervenor. * | (Responsibilities); |
| * | Rules of the United States Court of |
| ***************************************** | Federal Claims ("RCFC"), |
| | RCFC 52.1 (Administrative |
| | Record). |

**Mark R. Thomas**, Reid Law PC, Denver, Colorado, Counsel for Plaintiff.

**Mark Edward Porada**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**William Barron Arbuthnot Avery**, Baker & Hostetler, LLP, Washington, D.C., Counsel for the Defendant-Intervenor.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

*On August 9, 2016, the court forwarded a sealed copy of this Memorandum Opinion And Final Order to the parties to redact any confidential and/or privileged information from the public version, and note any citation or editorial errors requiring correction.

## I.     RELEVANT FACTUAL BACKGROUND.[1]

On September 16, 2015, the United States Transportation Command ("USTRANSCOM") issued Solicitation HTC711-15-R-W004 ("Solicitation") for tug and barge services to transport bulk jet fuel in the Gulf of Mexico and the Lower Mississippi River.  AR Tab 13 at 95, 144.  The Solicitation provided that a Firm Fixed Price contract would be awarded using low priced technically acceptable ("LPTA") source selection procedures.  AR Tab 13 at 122.  The Solicitation identified five factors that would be used to evaluate offers:

FACTOR 1: Price
FACTOR 2: Technical Capability
          Subfactor A: Equipment
          Subfactor B: Management of Operations
FACTOR 3: Past Performance
FACTOR 4: Cyber Security
FACTOR 5: Evaluation of Use of U.S. Shipyards

AR Tab 13 at 123.

On October 1, 2015, USTRANSCOM issued an Amendment that modified 3.1.1 of the Performance of Work Statement ("PWS") to provide that the offerors' barges could not be more than twelve years old.  AR Tab 16 at 188, 203.  The October 1, 2015 Amended Solicitation also provided that the offerors' proposals first would be ranked in price order from lowest to highest, based on the total proposed price ("TPP").  AR Tab 16 at 188.

The October 1, 2015 Amended Solicitation also provided that the Source Selection Evaluation Board would evaluate each offeror's Factor 2 Technical Capability at the subfactor level and rate each subfactor "Acceptable or Unacceptable."  AR Tab 16 at 188.  Next, the Source Selection Evaluation Board would evaluate the Factor 3 Past Performance of the lowest ranked TPP offeror with Acceptable ratings.  AR Tab 16 at 188.  Factor 3 Past Performance would be rated Acceptable or Unacceptable.  AR Tab 16 at 188.  Next, the lowest ranked TPP offeror with Acceptable Technical Capability and Past Performance ratings would be evaluated for Factor 4 Cyber Security.  AR Tab 16 at 188.  Factor 4 Cyber Security would be rated Acceptable or Unacceptable.  AR Tab 16 at 188.  Next, the lowest ranked TPP offeror with Acceptable Technical, Past Performance, and Cyber Security ratings would be evaluated under Factor 5, *i.e.*, use of United States shipyards for certain overhaul, repair, and maintenance work.  AR Tab 16 at 188.  The Source Selection Evaluation Board would rate Factor 5 as Acceptable or Unacceptable.  AR Tab 16 at 188.  Finally, the lowest TPP proposal with Acceptable ratings for Technical Capability, Past Performance, Cyber Security and U.S. [United States] shipyard use would be evaluated to determine "whether the prices offered are fair and reasonable . . . using one or more techniques set forth in FAR 15.404-1(b)(2)."  AR Tab 16 at 188.  If the *lowest ranked* TPP offeror's prices were determined to be fair and reasonable, that offer would be determined to represent the "best value"

---

[1] The facts discussed herein were derived from the May 11, 2016 Administrative Record ("AR Tabs 1–132," comprised of pages 1–2998).

for the Government and the evaluation would end and award would be made to that offeror "without further consideration of any other offers." AR Tab 16 at 188.

If the Government was unable to determine the lowest ranked TPP offeror's prices to be fair and reasonable or if an Unacceptable rating was received,

> the next lowest ranked TPP offer [would] be evaluated. This process [would] continue (in order of ascending price) until an offeror [was] judged to have [Acceptable] ratings . . . or until all offerors have been evaluated. At this point, the Source Selection Authority [would] determine whether it is in the Government's best interest to award without discussions or enter into discussions.

AR Tab 16 at 188.

On October 8, 2015, USTRANSCOM issued another Amendment that: extended the proposal due date from October 16, 2015 to October 19, 2015; extended the deadline for the Past Performance Questionnaire to October 19, 2015; revised paragraphs 3.1.1 and 3.1.1.1. of the PWS; and revised the Pricing Matrix. AR Tab 21 at 237.

On October 19, 2015, USTRANSCOM received proposals from JAR Assets, Inc. ("JAR"), T.W. LaQuay Marine, LLC ("LaQuay"), and [REDACTED]. AR Tab 33 at 825. [REDACTED] TPP was the lowest and [REDACTED] TPP was the highest. AR Tab 33 at 825.

On November 5, 2015, USTRANSCOM rated all proposals as Unacceptable, based on the Technical Capability subfactors. AR Tab 37 at 852. USTRANCOM suspended further proposal evaluations and decided to conduct discussions with all offerors "with the intent of allowing the offerors to revise their technical proposals to enhance their proposal's potential for award[.]" AR Tab 37 at 853. That same day, USTRANSCOM issued seven evaluation notices each to all three offerors. AR Tabs 38–40.

On November 17, 2015, LaQuay responded to the seven evaluation notices. AR Tabs 59–66. On November 20, 2015, JAR responded to the seven evaluation notices. AR Tabs 67–73. On November 25, 2015, [REDACTED] responded to the seven evaluation notices. AR Tabs 74–79.

On December 30, 2015, USTRANSCOM sent an email to LaQuay with a Final Proposal Revisions Request, stating "[t]he Government has completed its evaluation of your responses to our Evaluation Notices and concluded all technical discussion issues have been resolved." AR Tab 106 at 2657. Specifically, USTRANSCOM determined that all of LaQuay's Factors were "Acceptable," and LaQuay's TPP was $76,532,080.56. AR Tab 106 at 2656–57. That same day, USTRANSCOM also sent an email to [REDACTED] with a Final Proposal Revisions Request, stating "[t]he Government has completed its evaluation of your responses to our Evaluation Notices and concluded all technical discussion issues have NOT been resolved." AR Tab 107 at 2660–61. Specifically, USTRANSCOM determined that [REDACTED] Factor 2 Technical Capability was still "Unacceptable." AR Tab 107 at 2661. That same day, USTRANSCOM also sent an email with a Final Proposal Revisions Request to JAR, stating that "[t]he Government has completed its evaluation of your responses to our Evaluation Notices and concluded all technical discussion issues have been resolved." AR Tab 105 at 2652–53. Specifically, USTRANSCOM

determined that all of JAR's Factors were "Acceptable," and JAR's TPP was [REDACTED].  AR Tab 105 at 2653.

On January 4, 2016, JAR submitted a revised Final Proposal.  AR Tab 109.  On January 5, 2016, LaQuay elected not to submit any revisions[2] and submitted a Final Proposal.  AR Tab 110.  On January 7, 2016, [REDACTED] submitted a revised Final Proposal.  AR Tab 112.

On January 27, 2016, USTRANSCOM awarded the contract to JAR.  AR Tab 122 at 2710.

On February 1, 2016, LaQuay requested a debriefing.  AR Tab 126 at 2782.  On February 3, 2016, USTRANSCOM provided LaQuay with a written explanation.  AR Tab 128.

## II.   PROCEDURAL HISTORY.

### A.   Proceedings Before The United States Government Accountability Office.

On February 16, 2016, LaQuay filed a protest with the United States Government Accountability Office ("GAO"), alleging that USTRANSCOM's initial evaluation of LaQuay's proposal was "irrational and unreasonable," because "LaQuay's price was in the competitive range and its technical proposal was objectively [A]cceptable from the outset[.]"  AR Tab 129 at 2788. On April 7, 2016, the GAO dismissed LaQuay's protest, because "[t]he [Solicitation] provided for [an] award . . . without discussions where the firm that submitted the lowest-priced initial proposal was also determined to have submitted a technically [A]cceptable proposal; however, where the lowest-priced initial proposal was not found to be [A]cceptable, the agency retained the right to conduct discussions[.]"  AR Tab 132 at 2996.

### B.   Proceedings Before The United States Court Of Federal Claims.

On May 3, 2016, LaQuay ("Plaintiff") filed: a Complaint; a Motion For Temporary Restraining Order; a Motion For Preliminary Injunction; a Motion For Permanent Injunction; a Motion For Protective Order; a Rule 7.1 Disclosure Statement; and a Motion To Seal The Motion For Protective Order, Motion For Temporary Restraining Order, Motion For Preliminary Injunction, Motion For Permanent Injunction, Disclosure Statement, And Complaint.

On May 4, 2016, the court convened a telephone status conference, wherein the court denied Plaintiff's Motion For Temporary Restraining Order, subject to the Government's filing of appropriate verification from agency counsel substantiating the Government's representations during the status conference regarding the necessity of uninterrupted fuel services to support jet warfighters at up to [REDACTED] military installations made.

On May 5, 2016, JAR ("Defendant-Intervenor") filed, under seal, a Motion To Intervene that the court granted on May 10, 2016.  On May 11, 2016, the court issued a Protective Order. That same day, the Government filed a Notice Of Filing Administrative Record And Certification

---

[2] LaQuay submitted a "corrected pricing matrix," but this was because USTRANSCOM provided a pricing spreadsheet with an error in the Solicitation.  As such, USTRANSCOM corrected the error and requested all offerors to re-submit pricing on the corrected spreadsheet. AR Tabs 105–107.

Of The Administrative Record and a Response To Plaintiff's May 3, 2016 Motion For Temporary Restraining Order, under seal. On May 14, 2016, Plaintiff filed, under seal, an Unopposed Motion To Amend Schedule that the court granted on May 16, 2016. On May 17, 2016, the court granted Plaintiff's May 3, 2016 Motion To Seal. On May 18, 2016, Plaintiff filed, under seal, a Reply To The Government's May 11, 2016 Response To Plaintiff's May 3, 2016 Motion For Temporary Restraining Order.

On May 20, 2016, Plaintiff filed an Amended Complaint ("Am. Compl.") with two counts. Count I alleged that USTRANSCOM violated the Federal Acquisition Regulations ("FAR"). Am. Compl. ¶¶ 102–04. Specifically, Count I of the May 20, 2016 Amended Complaint alleged that USTRANSCOM's evaluation and award decision violated FAR §§ 1.401 and 15.101-2 by deviating from the LPTA source selection procedures outlined in FAR Part 15. Am. Compl. ¶¶ 105–11. The May 20, 2016 Amended Complaint also alleged that USTRANSCOM violated FAR § 15.303(b)(4) by imposing evaluation criteria not discussed in the Solicitation. Am. Compl. ¶¶ 112–15. The May 20, 2016 Amended Complaint also alleged that USTRANSCOM violated FAR § 15.303(b)(5), because USTRANSCOM did not select Plaintiff as providing the "best value" to the agency. Am. Compl. ¶¶ 117–21. Count II of the May 20, 2016 Amended Complaint alleged that USTRANSCOM's evaluation and award decision did not have a rational basis and was irrational. Am. Compl. ¶¶ 122–42. That same day, JAR filed, under seal, a Response To Plaintiff's May 3, 2016 Motion For Preliminary Injunction.

On May 31, 2016, Plaintiff filed, under seal, a Motion For Judgment On The Administrative Record and attached thereto a Memorandum In Support Of Plaintiff's Motion For Judgment On The Administrative Record ("Pl. MMJAR"). On June 24, 2016, the Government filed, under seal, an Opposition To Plaintiff's Motion For Judgment On The Administrative Record And Cross-Motion For Judgment On The Administrative Record ("Gov't MJAR"). On June 25, 2016, Defendant-Intervenor filed an Unopposed Motion For Extension Of Time Until 6/25/16 To File Cross-Motion And Opposition and filed, under seal, a Cross-Motion And Response To Plaintiff's Motion For Judgment On The Administrative Record ("D.I. MJAR") And Partial Motion To Dismiss ("D.I. Mot."). On June 27, 2016, the court granted Defendant-Intervenor's June 25, 2016 Unopposed Motion For Extension Of Time. On July 1, 2016, Plaintiff filed, under seal, a Response To The Government's And Defendant-Intervenor's Cross-Motions For Judgment On The Administrative Record ("Pl. Resp."). On July 11, 2016, the Government filed a Reply To Plaintiff's Response To Defendant's Cross-Motion For Judgment On The Administrative Record ("Gov't Reply"). That same day, the Defendant-Intervenor also filed a Reply To Plaintiff's Response To Cross-Motion And Opposition To Judgment On The Administrative Record ("D.I. Reply").

### III.    DISCUSSION.

#### A.  Jurisdiction.

Pursuant to 28 U.S.C. § 1491(b)(1), the United States Court of Federal Claims has jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement.

28 U.S.C. § 1491(b)(1).

The May 20, 2016 Amended Complaint alleges that USTRANSCOM erred in awarding the contract to JAR.  Am. Compl. ¶¶ 12–13.  The United States Court of Federal Claims has jurisdiction to adjudicate allegations by an interested party objecting to a proposed contract or award.  *See* 28 U.S.C. § 1491(b)(1).  Therefore, the court has jurisdiction to adjudicate the claims in LaQuay's May 20, 2016 Amended Complaint.

#### B.  Standing.

As a threshold matter, a plaintiff contesting the award of a federal contract must establish that it is an "interested party" to have standing under 28 U.S.C. § 1491(b)(1).  *See Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue[.]").  The United States Court of Appeals for the Federal Circuit has construed the term "'interested party' in section 1491(b)(1) . . . in accordance with the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551–56[.]"  *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006).  "[T]o come within the [United States] Court of Federal Claims' section 1491(b)(1) bid protest jurisdiction, [the protester] is required to establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest."  *Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008) (citations omitted).

In addition to establishing "interested party" status, a protestor must show that the alleged errors in the procurement were prejudicial.  *See Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378–79 (Fed. Cir. 2009) ("It is basic that 'because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits.'"); *see also Myers*, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of standing.").

In this case, LaQuay submitted a proposal in response to the Solicitation.  AR Tab 32.  As an actual bidder, LaQuay satisfies the first element of the "interested party" test. *See Distrib. Solutions, Inc.*, 539 F.3d at 1344 ("To qualify as an 'interested party,' a protestor must establish that . . . it was an actual or prospective bidder or offeror[.]").

As to the second element, *i.e.*, that the plaintiff "had a direct economic interest" in the proposed procurement, the May 20, 2016 Amended Complaint alleges that had USTRANSCOM

conducted a proper LPTA procurement, LaQuay would have been the only eligible offeror. Am. Compl. ¶ 12. Thus, LaQuay satisfies the second element of the "interested party" test.

As to prejudice, the May 20, 2016 Amended Complaint alleges that USTRANSCOM's violations of the FAR and/or the irrational evaluation of the proposals resulted in USTRANSCOM's failure to award LaQuay the contract.   Am. Compl. ¶¶ 102–42. USTRANSCOM's violation of the FAR and/or an irrational evaluation would prejudice LaQuay, because "there is a 'substantial chance' [that the plaintiff] would have received the contract award but for the . . . error[] in the bid process." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005).

For these reasons, the court determines that LaQuay has standing to seek adjudication of this bid protest.

### C. Whether The Source Selection Authority Violated FAR §§ 15.101-2, 1.4, 15.303(b)(4), And 15.303(b)(5).

#### 1. Plaintiff's Argument.

The Solicitation required USTRANSCOM to conduct an LPTA procurement.  Pl. MMJAR at 17 (citing AR Tab 21 at 28).  Specifically, the Solicitation stated that, "Award will be made to the lowest priced responsible offeror whose proposal meets the requirements for technical capability, past performance, cyber security, use of U.S. shipyards and whose price is determined fair and reasonable." Pl. MMJAR at 17 (emphasis in Plaintiff's brief) (quoting AR Tab 13 at 122). FAR § 15.101-2(b)(1) requires that an agency conducting an LPTA procurement "shall specify [in the solicitation] that award will be made on the basis of the lowest evaluated price of proposals meeting or exceeding the acceptability standards for non-cost factors." Pl. MMJAR at 18 (emphasis in Plaintiff's brief) (quoting § 15.101-2(b)(1)).  LaQuay's October 19, 2015 Proposal and LaQuay's January 5, 2016 Proposal were exactly the same.  Pl. MMJAR at 10.  Accordingly, LaQuay's October 19, 2015 Proposal should have been rated Acceptable and LaQuay should have been awarded the Contract under LPTA procedures. Pl. MMJAR at 18.  Therefore, USTRANSCOM's discussions with two Unacceptable offerors, when LaQuay's October 19, 2015 Proposal was initially Acceptable, violated FAR § 15.101-2 "by creating evaluation criteria *other than* approved LPTA procedures . . . , which improperly replaced FAR 15.101-2 without prior approval."  Pl. MMJAR at 18.

In addition, USTRANSCOM violated FAR Subpart 1.4, "which prescribes the policies and procedures for authorizing deviations from the FAR," by replacing FAR-mandated LPTA procedures without authorization.  Pl. MMJAR at 19. "[D]eviations from the FAR must be affirmatively granted by the agency head, and the 'contracting officer must document the justification and agency approval in the contract file.'"  Pl. MMJAR at 18 (citing FAR § 1.403). A deviation is "a policy, procedure, solicitation provision . . . , contract clause . . . , method, or practice of conducting acquisitions of any kind at any stage of the acquisition process that is inconsistent with the FAR."  Pl. MMJAR (quoting FAR § 1.401(a)).   LaQuay argued that USTRANCOM improperly deviated from LPTA procedures in FAR § 15.101-2 by conducting discussions with all offerors. Pl. MMJAR at 18–19.  To the extent that the Government contended

that the Solicitation authorized FAR deviations, "the language notifying offerors of the deviation without citation to the granting authority expressly prescribed by FAR § 1.403 constituted a latent ambiguity that could not have been discovered by a reasonable offeror at the time of proposal submission." Pl. MMJAR at 19.

LaQuay also argued that USTRANSCOM violated FAR § 15.303(b)(4), by imposing evaluation criteria not stated in the Solicitation. Pl. MMJAR at 19. FAR § 15.303(b)(4) requires that the Source Selection Authority "[e]nsure . . . proposals are evaluated based solely on the factors and subfactors contained in the solicitation[.]" Pl. MMJAR at 19. USTRANSCOM improperly sought additional information through evaluation notices, claiming that LaQuay's October 19, 2015 Proposal did not contain the requisite information. Pl. MMJAR at 20. USTRANSCOM's improper determination that additional information was required "led to it making the improper initial determination that LaQuay's Technical Proposal was Unacceptable. This determination in turn led [USTRANSCOM] to wrongfully open discussions with other offerors[.]" Pl. MMJAR at 20.

And, LaQuay argued that USTRANSCOM violated FAR § 15.303(b)(6)[3] requiring an agency to "[s]elect the source or sources whose proposal is the best value to the Government." Pl. MMJAR at 20 (quoting FAR § 15.303(b)(6)). Prior to discussions, there was only one technically [A]cceptable proposal—LaQuay's. Pl. MMJAR at 21. "[USTRANSCOM's] failure to award [LaQuay] . . . clearly prejudiced LaQuay because it was the Best Value offeror and should have received the contract award." Pl. MMJAR at 21.

## 2. The Government's And Defendant-Intervenor's Responses.

The Government responded that the May 20, 2016 Amended Complaint's allegation that USTRANSCOM improperly deviated from the FAR is untimely. Gov't MJAR at 12. LaQuay waived the right to challenge the Solicitation's terms by failing to raise the challenges before the close of bidding. Gov't MJAR at 12 (citing *Bannum, Inc. v. United States*, 779 F.3d 1376, 1380 (Fed. Cir. 2015)). Because LaQuay raised this claim for the first time post-award, LaQuay "has waived any right to challenge the terms of the [S]olicitation or the evaluation process[.]" Gov't MJAR at 12–13.

The Government also contended that, even if LaQuay established that the October 19, 2015 Proposal "should have been found technically [A]cceptable at the outset," the Solicitation's terms did not require an automatic award of the contract to LaQuay. Gov't MJAR at 13–14. The plain

---

[3] LaQuay cited FAR § 15.303(b)(5) as requiring an agency's source selection authority to "[s]elect the source or sources whose proposal is the best value to the Government[.]" Pl. MMJAR at 20–21. But, FAR § 15.303(b)(5) states that an agency's source selection authority only will "[c]onsider the recommendations of advisory boards or panels (if any)[.]" FAR § 15.303(b)(5). The court interprets LaQuay's citation to FAR § 15.303(b)(5) as a mistake and assumes that LaQuay intended to refer to FAR § 15.303(b)(6), requiring an agency's source selection authority to "[s]elect the source or sources whose proposal is the best value to the Government[.]" FAR § 15.303(b)(6).

language of the Solicitation made clear that automatic award would occur only if the offeror with the lowest ranked TPP had Acceptable ratings *and* if the Government determined that that offeror's price was fair and reasonable. Gov't MJAR at 14 (citing AR 16 at 188). "Here, it is undisputed that LaQuay did *not* have the lowest ranked [TPP]; [REDACTED]." Gov't MJAR at 14 (emphasis in original). [REDACTED] had the lowest TPP. Gov't MJAR (citing AR Tab 37 at 852). Under the Solicitation's terms, if USTRANSCOM determined that [REDACTED] initial proposal technically was Acceptable and the proposed price was fair and reasonable, then "the award would have been issued to [REDACTED] without further consideration of the competing offers." Gov't MJAR at 14. But, USTRANSCOM determined [REDACTED] proposal was technically Unacceptable, and therefore, was free to engage in discussions with the three offerors. Gov't MJAR at 14 (citing AR Tab 16 at 188).

In addition, the Solicitation incorporated FAR § 52.212-1(g).[4] Gov't MJAR at 15 (citing AR Tab 13 at 95, 117). Specifically, "although [USTRANSCOM] intended to award a contract without discussions if able to do so, [USTRANSCOM] 'reserve[d] the right to conduct discussions if later determined by the Contracting Officer to be necessary.'" Gov't MJAR at 15 (citing AR Tab 13 at 117). As such, in the event that the lowest ranked TPP offeror did not have Acceptable ratings and/or a fair and reasonable price, then USTRANSCOM would "determine whether it is in the Government's best interest to award without discussions or enter into discussions." Gov't MJAR at 15 (quoting AR Tab 16 at 188). As the Contracting Officer explained:

> It is determined to be in the Government's best interest to keep all three Offerors in the competitive range and open discussions. The SSEB [Source Selection Evaluation Board] technical team determined that through discussions it is anticipated each offeror['s] technical proposal can be altered or explained to enhance materially the proposal's potential for a technically [A]cceptable rating. Discussion ENs [Evaluation Notices] were generated because the offerors left out information required by the solicitation/PWS [Performance Work Statement] and/or did not adequately explain or demonstrate specific requirement capabilities.

Gov't MJAR at 15 (quoting AR Tab 37 at 852).

---

[4] FAR § 52.212-1(g) provides:

Contract award (not applicable to Invitation for Bids). The Government intends to evaluate offers and award a contract without discussions with offerors. Therefore, the offeror's initial offer should contain the offeror's best terms from a price and technical standpoint. However, the Government reserves the right to conduct discussions if later determined by the Contracting Officer to be necessary. The Government may reject any or all offers if such action is in the public interest; accept other than the lowest offer; and waive informalities and minor irregularities in offers received.

48 C.F.R. § 52.212-1(g).

Therefore, "[e]ven assuming LaQuay's proposal was found technically [A]cceptable, and the other two proposals had been found technically [U]nacceptable, the [S]olicitation on its face allowed [USTRANSCOM] to conduct discussions with offerors . . . prior to making any award." Gov't MJAR at 16.

Next, the Government rebutted LaQuay's contention that the Solicitation did not clearly state that the modified evaluation process had been approved by USTRANSCOM in accordance with FAR § 1.403 and thus, contained a "latent ambiguity." Gov't MJAR at 17 (citing Pl. MMJAR at 19). FAR § 1.403 provides that a solicitation may deviate from standard FAR solicitation terms, if approved and documented by the agency. Gov't MJAR at 17–18 (citing FAR § 1.403). "[E]ven if the omission of that certification of authorization possibly could be viewed as creating any ambiguity in the evaluation process stated in the [S]olicitation, it would be a patent ambiguity." Gov't MJAR at 18 (citing *Newsom v. United States*, 676 F.2d 647, 650 (Ct. Cl. 1982)). "If a contract contains a patent ambiguity, the contractor is under a duty to inquire and must seek clarification of the proper contract interpretation." Gov't MJAR (quoting *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1579 (Fed. Cir. 1993)).

Finally, the Government concluded that USTRANSCOM did not violate FAR § 15.303(b)(6) as it states that a source selection authority will "[s]elect the source or sources whose proposal is the best value to the Government." Gov't MJAR at 19 (quoting 48 C.F.R. § 15.303(b)(6)). But, an agency "has considerable discretion in determining which proposal represents the best value." Gov't MJAR at 19 (citing *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 908 (Fed. Cir. 2013) ("This court accords contracting officers an even greater degree of discretion when the award is determined based on the best value to the agency."); *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1355 (Fed. Cir. 2004) ("It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value.")). USTRANSCOM's determination that JAR's proposal offered the "best value" is fully explained in detail in the record. Gov't MJAR at 20 (citing AR Tab 119).

The Defendant-Intervenor added that the terms of the Solicitation are "unambiguous," because the Solicitation plainly specifies only one situation where USTRANSCOM would award the contract without discussions: "if the lowest priced TPP offer were found to [have] a Technically Acceptable proposal with a fair and reasonable price[.]" D.I. MJAR at 10–11 (citing AR Tab 16 at 188). In the absence of such an offeror, the Solicitation provided that the Source Selection Authority had the discretion to determine, if "it is in the Government's best interest to award without discussions" or to enter discussions. D.I. MJAR at 11 (citing AR Tab 16 at 188).[5]

---

[5] Plaintiff countered, "LaQuay's argument is that [USTRANSCOM's] *interpretation* and *application* of the [S]olicitation . . . improperly led it to ignore a technically [A]cceptable proposal, which (1) effectively constituted an improper FAR deviation, and (2) conflicted with the terms of the [S]olicitation when read as a whole and in conjunction with the FAR." Pl. Resp. at 4. "In fact, rather than the language of the [S]olicitation itself patently contravening the FAR, it was [USTRANSCOM's] subsequent actions that actually contravened the FAR LPTA procedures."

### 3. The Court's Resolution.

**i.      The May 20, 2016 Amended Complaint's Count I Claims Based On FAR §§ 1.4 And 15.101-2 Are Untimely.**

It is well-established that "a party who has the opportunity to object to the terms of a government solicitation containing a *patent* error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the [United States] Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (emphasis added). LaQuay argued that the Solicitation's provisions allowing USTRANSCOM to conduct discussions was not a *patent* error, but a *latent* ambiguity and therefore, LaQuay's challenge is timely. Pl. MMJAR at 19.

In determining whether a solicitation's provisions contain a patent error or a latent ambiguity, the court must first determine whether the Solicitation's provisions governing discussions were ambiguous. *See NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term. [Instead], both interpretations must fall within a 'zone of reasonableness.'"); *see also Avedon Corp. v. United States*, 15 Cl. Ct. 771, 776 (1988) ("A contract is ambiguous[,] if it sustains the interpretations advanced by both parties."). Under LaQuay's interpretation, the Source Selection Authority must automatically award a technically Acceptable offeror that has *the highest price*, without discussion. Pl. MMJAR at 17–18. But this interpretation directly contradicts the terms of the Solicitation. The Solicitation clearly stated that the Source Selection Authority would conduct discussions if the *lowest ranked* TPP offeror did not have Acceptable ratings or a fair and reasonable price. AR Tab 16 at 188 ("If the Government is unable to determine the lowest ranked TPP offeror's prices to be fair and reasonable or if an [U]nacceptable rating is received . . . , the next lowest ranked TPP offer will be evaluated. This process will continue (in order of ascending price) until an offeror is judged to have . . . [A]cceptable [ratings] . . . or until all offerors have been evaluated. At this point, the Source Selection Authority will determine whether it is in the Government's best interest to award without discussions or enter into discussions."). LaQuay's interpretation is unreasonable and the Solicitation is not ambiguous. Accordingly, the May 20, 2016 Amended Complaint's challenge based on FAR 1.4 and the Source Selection Agency's decision to engage in discussions with offerors is untimely.

Even assuming *arguendo* that the May 20, 2016 Amended Complaint's allegation was timely, USTRANSCOM did not improperly deviate from the FAR by conducting discussions. An improper deviation from the FAR occurs when an agency uses "a policy, procedure, solicitation provision . . . , contract clause . . . , method, or practice of conducting acquisitions of any kind at any stage of the acquisition process that is inconsistent with the FAR." FAR § 1.401(a). Individual

---

Pl. Resp. at 4. LaQuay only learned of USTRANSCOM's interpretation and application of the Solicitation *after* the award was made; LaQuay is "not expected to exercise clairvoyance in spotting hidden ambiguities in the bid documents[.]" Pl. Resp. at 5 (quoting *Blount Bros. Constr. Co. v. United States*, 346 F.2d 962, 973 (Ct. Cl. 1965)).

deviations from the FAR "may be authorized by the agency head. The contracting officer must document the justification and agency approval in the contract file." FAR § 1.403. The Solicitation expressly stated that it would use "low priced technically acceptable (LPTA) source selection procedures (FAR 15.101-2)." AR Tab 16 at 188. The LPTA procedures in FAR § 15.101-2 permits an agency to engage in discussions with offerors when conducting an LPTA procurement. FAR § 15.101-2(b)(4) ("Exchanges may occur[.]"). As such, even assuming LaQuay's October 19, 2015 Proposal should have been determined technically Acceptable, USTRANSCOM's decision to conduct discussions with offerors did not deviate from the FAR.

In addition, the May 20, 2016 Amended Complaint's claim based on FAR § 15.101-2 also is untimely. The Solicitation enumerated the specific procedures that USTRANSCOM would consider in evaluating the offers and was unambiguous about the Source Selection Authority's discretion to engage in discussions. AR Tab 16 at 188. For example, the Solicitation provided that only the lowest ranked TPP offeror with Acceptable ratings and whose price is determined to be fair and reasonable will be awarded the contract without further discussions. AR Tab 16 at 188. In the event the lowest ranked TPP offeror's prices were not fair and reasonable or if the lowest ranked TPP offeror receives an Unacceptable rating, then the Source Selection Authority would evaluate the next lowest TPP offeror. AR Tab 16 at 188. If the next lowest TPP offeror receives Acceptable ratings, then "the Source Selection Authority *will determine* whether it is in the Government's best interest *to award without discussions or enter into discussions*." AR Tab 16 at 188 (emphasis added). The parties do not dispute that LaQuay's October 19, 2015 Proposal offered [REDACTED] TPP. AR Tab 33 at 825. Therefore, under the Solicitation's terms, even if LaQuay's October 19, 2015 Proposal was the only proposal with Acceptable ratings, the Source Selection Authority should have found that it was in the best interest of the Government to enter into discussions. AR Tab 16 at 188. Accordingly, the May 20, 2016 Amended Complaint's challenge is untimely. Even if the May 20, 2016 Amended Complaint's challenge, based on FAR § 15.101-2 was timely, the LPTA procedures in FAR § 15.101-2 permits an agency to engage in discussions with offerors when conducting an LPTA procurement. *See* FAR § 15.101-2(b)(4) ("Exchanges may occur[.]"). As such, USTRANSCOM did not violate FAR § 15.101-2 by conducting discussions with offerors.

For these reasons, the court has determined that the May 20, 2016 Amended Complaint's FAR § 1.4 *et seq.* and FAR § 15.101-2 challenges to the Solicitation are untimely. Nevertheless, USTRANSCOM did not deviate from the FAR and therefore, has not violated FAR § 1.4 *et seq.* The court also has determined that USTRANSCOM did not violate FAR § 15.101-2.

## ii.     The Source Selection Authority Did Not Violate FAR § 15.303(b)(4).

FAR § 15.303(b)(4) requires that proposals should be evaluated "based solely on the factors and subfactors contained in the solicitation." FAR § 15.303(b)(4). USTRANSCOM issued seven evaluation notices to LaQuay. AR Tab 39. LaQuay argues that these evaluation notices improperly sought information beyond what the Solicitation required. Pl. MMJAR at 19–20. Based on the court's evaluation of the Administrative Record, *infra*, the court has determined that USTRANSCOM's evaluation notices did not seek information beyond what was required in the Solicitation.

### iii.   The Source Selection Authority Did Not Violate FAR § 15.303(b)(6).

FAR § 15.303(b)(6) provides that an agency "shall . . . [s]elect the source or sources whose proposal is the best value to the Government[.]"  FAR § 15.303(b)(6).  In this LPTA procurement, the best value proposal was defined as the proposal that had "the lowest evaluated price . . . meeting or exceeding the acceptability standards for non-cost factors."  FAR § 15.101-2(b)(1).  The Solicitation specified that automatic award would be made to the *lowest ranked* TPP offeror that had Acceptable ratings and whose price was determined to be fair and reasonable.  AR Tab 16 at 188.  It is undisputed that LaQuay's October 19, 2015 Proposal had [REDACTED] TPP.  AR Tab 33 at 825.  As such, USTRANSCOM did not violate FAR § 15.303(b)(6) by conducting discussions with the offerors rather than automatically awarding the contract to LaQuay based on LaQuay's October 19, 2015 Proposal.

### D.  Whether The Source Selection Authority's Decision Lacked A *Rational Basis*.

### 1.  Plaintiff's Argument.

LaQuay argued that although USTRANSCOM identified seven problems with LaQuay's October 19, 2015 Proposal, "it is apparent that <u>none</u> of the discussion issues raised in the seven Evaluation Notices justify the . . . initial determination that LaQuay's Technical Capabilities Factor was [U]nacceptable."  Pl. MMJAR at 23 (emphasis in original).

USTRANSCOM's Evaluation Notice LAQ-0001 stated that LaQuay's October 19, 2015 Proposal was defective, because LaQuay provided documentation for only four motor vessels and four barges when the Solicitation required documentation for four motor vessels and eight barges.  Pl. MMJAR at 23 (citing AR Tab 39 at 900).  But, the Solicitation only required offerors to provide documentation "for the *primary* four barges, not the *optional* four barges."  Pl. MMJAR at 23 (emphasis in original).  Specifically, the Solicitation required "[t]wo barge tows . . . [and] [e]ach tow shall consist of either two individual 25,000 barrel barges, or not more than three barges total[.]"  AR Tab 21 at 253–54.  The Solicitation also required "two (2) additional optional on-call tows" that could be ordered separately.  AR Tab 21 at 254.  In addition, LaQuay's October 19, 2015 Proposal specifically provided that [REDACTED]."  Pl. MMJAR at 25 (quoting AR Tab 32 at 809).  LaQuay also provided that it had [REDACTED]."  Pl. MMJAR at 25 (quoting AR Tab 32 at 809).  Because the Solicitation stated that USTRANSCOM "may *optionally* require . . . two additional "on call" tows . . . [, USTRANSCOM's] assertion that . . . 'Offeror is required to provide information on the four (4) additional barges: USCG certificates, specification sheets, and proof of ownership or long term lease agreement . . .' is simply not supported[.]"  Pl. MMJAR at 25 (quoting AR Tab 32 at 809).  Although LaQuay responded to Evaluation Notice LAQ-001 [REDACTED]," LaQuay did not incorporate these letters into the final January 5, 2016 Proposal.  Pl. MMJAR at 26 (citing AR Tab 59 at 2241).

In Evaluation Notice LAQ-0002, USTRANSCOM explained that LaQuay's October 19, 2015 Proposal was defective, because LaQuay allegedly failed "to provide evidence or supporting documentation that the barges offered are double hulled[.]"  Pl. MMJAR at 27 (quoting AR Tab 39 at 901).  But, LaQuay's Technical proposal states that [REDACTED]."  Pl. MMJAR at 27.  Moreover, the Solicitation "*did not require specifications or drawings* of the proposed barges."

Pl. MMJAR at 28 (emphasis in original) (citing AR Tab 21 at 253–54). "Although this information was not required, in response to the . . . Evaluation Notice, LaQuay provided [REDACTED]." Pl. MMJAR at 28 (citing AR Tab 60). LaQuay did not incorporate this information into the January 5, 2016 Proposal. Pl. MMJAR at 28.

In Evaluation Notice LAQ-0003, USTRANSCOM also stated LaQuay's Technical Proposal was defective, because LaQuay failed "to adequately demonstrate/confirm that all offered barge equipment have Cargo Tank Stripping system(s) and Water Stripping System(s) 'independent' of the main cargo tank pumping system and that all offered barge equipment have trim correction tables and legible draft markings." Pl. MMJAR at 28–29 (citing AR Tab 39 at 902). But, LaQuay's October 19, 2015 Proposal provided [REDACTED]. Pl. MMJAR at 30 (citing AR Tab 32 at 809–10). Therefore, USTRANSCOM's determination that LaQuay did not address the "independence of these systems reflects a [clear] misunderstanding of technical systems . . . and [USTRANSCOM's] unreasonable interpretation of LaQuay's Proposal and the [Solicitation]." Pl. MMJAR at 30. Cargo Tank Stripping Systems and Water Stripping Systems are "inherently independent of the onboard pumping main cargo pumping system and of each other[.]" Pl. MMJAR at 30–31. Specifically, USTRANSCOM's Team Technical Evaluation, AR Tab 88, "noted that the Offeror 'needs to *clarify* that Cargo Tank Stripping system(s) and Water Stripping system(s) are 'independent' of the main cargo tank pumping system[.]'" Pl. MMJAR at 31 (citing AR Tab 88 at 2588). As such, USTRANSCOM admitted that this issue could have been resolved by a clarification from LaQuay rather than opening up discussion with all offerors. Pl. MMJAR at 31. Nevertheless, LaQuay submitted additional documentation [REDACTED]. Pl. MMJAR at 31–32 (citing AR Tab 61 at 2262). LaQuay did not revise the January 5, 2016 Proposal in response to this Evaluation Notice. Pl. MMJAR at 42.

In Evaluation Notice LAQ-0004, USTRANSCOM stated LaQuay's October 19, 2015 Proposal was defective, because LaQuay failed "to describe and provide information on how it intends to comply with the gauging operations and completion of the Vessel Ullage Report[.]" Pl. MMJAR at 32 (citing AR Tab 39 at 903). But, the Solicitation did not require a narrative for gauging. Pl. MMJAR at 32 (citing AR Tab 21, at 241–42). Specifically, the Solicitation provided:

> Gauging of the vessel is performed jointly. A Government Representative must witness gauging of the vessel. Contractor Representative(s) personnel are responsible to perform gauging of the vessel. Gauging equipment used for quantity determination must be in proper serviceable condition. The contractor shall ensure that responsible Contractor Representative(s) personnel are readily available for gauging operations so as not to unduly delay release and departure of the equipment. The contractor shall ensure that a Vessel ullage report is annotated/completed at both the loading and discharge locations. In cases where the Government Representative annotates/completes the report, the Contractor will verify and agree with gauge figures and readings annotated by signing the report.

Pl. MMJAR at 33 (quoting AR Tab 21 at 261).

14

Although LaQuay was not required to provide a narrative, LaQuay's October 19, 2015 Proposal stated that [REDACTED]." Pl. MMJAR at 33–34 (emphasis in Plaintiff's brief) (quoting AR Tab 32 at 813). In addition, LaQuay responded to Evaluation Notice 0004, stating that it had [REDACTED]. Pl. MMJAR at 34 (quoting AR Tab 62 at 2272). USTRANSCOM reviewed LaQuay's response and determined that no further information was required. Pl. MMJAR at 34 (citing AR Tab 62 at 2272). LaQuay did not change the January 5, 2016 Proposal in response to Evaluation Notice LAQ-0004. Pl. MMJAR at 34.

In Evaluation Notice LAQ-0005, USTRANSCOM stated that LaQuay's October 19, 2015 Proposal was defective, because it failed to demonstrate the "managerial and supervisory ability of key personnel, operational controls, lines of authority, necessary staffing, and customer service as required by the [S]olicitation." Pl. MMJAR at 34 (quoting AR Tab 39 at 904). But, LaQuay's October 19, 2015 Proposal provided [REDACTED]. Pl. MMJAR at 35, (citing AR Tab 32 at 812–13). Specifically, LaQuay advised that [REDACTED]." Pl. MMJAR at 36 (citing AR Tab 32 at 812). In addition, LaQuay's October 19, 2015 Proposal stated that [REDACTED]." Therefore, a Quality Control Plan was not required in the Technical Proposal. Pl. MMJAR at 36 (citing AR Tab 21 at 265). As such, USTRANSCOM's determination that LaQuay's October 19, 2015 Proposal was "Unacceptable" lacked a rational basis. Pl. MMJAR at 37. LaQuay did not revise the January 5, 2016 Proposal in response to this Evaluation Notice. Pl. MMJAR at 42.

In Evaluation Notice LAQ-0006, USTRANSCOM stated that LaQuay's Technical Proposal was Unacceptable, because LaQuay's Proposal "failed/fails to demonstrate the ability to comply with the Cargo, Liability, Pollution, and Environmental Insurance requirements[.]" Pl. MMJAR at 37 (quoting AR Tab 39 at 905). The Solicitation, however, did not require offerors to submit proof of insurance. Pl. MMJAR at 37. Nevertheless, LaQuay responded to the Evaluation Notice by providing a certificate of insurance. Pl. MMJAR at 38 (citing AR Tab 64). LaQuay did not revise the January 5, 2016 Proposal in response to this Evaluation Notice. Pl. MMJAR at 38.

In Evaluation Notice LAQ-0007, USTRANSCOM stated that LaQuay's Technical Proposal was Unacceptable, because it "failed/fails to adequately demonstrate how it intends to comply with [Performance Work Statement] section 4.5.2.—Readiness Notice." Pl. MMJAR at 38 (quoting AR Tab 39 at 906). Here, USTRANSCOM "failed to account for the section of LaQuay's Proposal that addressed the use of a Notice of Readiness[.]" Pl. MMJAR at 38. Specifically, LaQuay's October 19, 2015 Proposal stated: [REDACTED]." Pl. MMJAR at 39 (quoting AR Tab 32 at 813). Therefore, LaQuay posited that "[t]he Team Evaluation must have entirely missed this portion of LaQuay's Proposal[.]" Pl. MMJAR at 39. Notwithstanding, LaQuay responded to the Evaluation Notice by stating [REDACTED]." Pl. MMJAR at 39 (quoting AR Tab 65). In support, LaQuay also attached [REDACTED]. Pl. MMJAR at 39 (citing AR Tab 65). USTRANSCOM then determined that LaQuay sufficiently addressed the Evaluation Notice. Pl. MMJAR at 39 (citing AR Tab 65). LaQuay did not revise the January 5, 2016 Proposal in response to this Evaluation Notice. Pl. MMJAR at 42.

In sum, "[a] review of all seven Evaluation Notices reveals that [USTRANSCOM's] asserted bases for finding LaQuay's Technical Proposal to be Unacceptable are without merit and are not supported by the Solicitation requirements." Pl. MMJAR at 41. This is evidenced by the

15

fact that, even though USTRANSCOM invited offerors to submit Final Proposal Revisions, LaQuay relied upon the October 19, 2015 Proposal. Pl. MMJAR at 42 (citing AR Tab 110). Although LaQuay responded to the seven Evaluation Notices, "LaQuay never modified its proposal. . . . However, to the extent such information was not already included in LaQuay's original Technical Proposal, such information was not necessary to properly respond to the [Solicitation]." Pl. MMJAR at 42.    To the extent that USTRANSCOM relied on LaQuay's responses to the Evaluation Notices, USTRANSCOM "effectively created and utilized unstated evaluation criteria," contrary to law and the Solicitation's requirements. Pl. MMJAR at 42–43.

Finally, LaQuay concluded that the Solicitation clearly stated that award "will be made to the lowest priced responsible offeror whose proposal meets the requirements for technical capability, past performance, cyber security, use of U.S. shipyards and whose price is determined fair and reasonable." Pl. MMJAR at 44–45 (emphasis in Plaintiff's brief) (quoting AR Tab 16 at 188).    As the only technically Acceptable offer with a fair and reasonable price, "award was required to have been made to LaQuay." Pl. MMJAR at 45.  The Solicitation "only authorized discussions in this procurement where [USTRANSCOM] did not have before it a technically [A]cceptable proposal with a fair and reasonable price; *i.e.*, only when discussions were determined to be 'necessary' and 'in the Government's best interest." Pl. MMJAR at 45 (emphasis in original) (citing AR Tab 13, at 117; AR Tab 16, at 188).    Therefore, USTRANSCOM "irrationally interpreted the [Solicitation] to permit discussions if the lowest priced technically [A]cceptable offeror did not have the overall lowest total proposed price *. . . of all offerors*, *regardless of whether those offerors submitted* [U]*nacceptable proposals and even if the prices were fair or unreasonable*." Pl. MMJAR at 46 (emphasis in original).  "[E]ven if this [c]ourt determines the language is ambiguous as to whether discussions were permitted, such a latent ambiguity should be construed against the Government in accordance with the recognized contract interpretation principle of *contra proferentum*." Pl. MMJAR at 47 (citing *Triax Pac., Inc. v. West*, 130 F.3d 1469, 1475 (Fed. Cir. 1997) ("More subtle ambiguities are deemed latent and are accorded an interpretation favorable to the contractor under the doctrine of *contra proferentem*.").  USTRANSCOM's irrational decision to engage in discussions permitted Unacceptable offerors to make material changes to Technical Proposals, "presumably guided by Evaluation Notices which provided a roadmap of how to become 'Acceptable.'" Pl. MMJAR at 47.

## 2.  The Government's And Defendant-Intervenor's Responses.

The Government responded that USTRANSCOM did not act irrationally in finding LaQuay's initial October 19, 2015 Proposal Unacceptable under the Technical subfactors. Gov't MJAR at 22. USTRANSCOM initially rated LaQuay's proposal as "Unacceptable" under the Technical subfactors.  Gov't MJAR at 22–23 (citing AR Tab 37 at 861–63; AR Tab 39 at 900–02).  "LaQuay now challenges [USTRANSCOM's] [U]nacceptable ratings, essentially asking the [c]ourt to re-evaluate the substance of its barge transportation proposal[.]"  Gov't MJAR at 23. But, the court should defer to USTRANSCOM's assessment, because this contract involves fuel transportation for the military and "[i]t is well established that courts typically show great deference to the judgment of military authorities on procurement issues related to national security." Gov't MJAR at 23 (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

USTRANSCOM did not act irrationally in issuing Evaluation Notice LAQ-0001. Gov't MJAR at 24. USTRANSCOM determined LaQuay's October 19, 2015 Proposal was Unacceptable under the Equipment Technical Subfactor, because LaQuay failed to provide certifications and documentations for [REDACTED]. Gov't MJAR at 24–25 (citing AR Tab 37 at 861). USTRANSCOM also determined LaQuay's proposal was Unacceptable, because LaQuay failed to provide information or documentation for [REDACTED]. Gov't MJAR at 25 (citing AR Tab 37 at 861). Accordingly, USTRANSCOM issued Evaluation Notice LAQ-0001 to provide LaQuay with an opportunity to present information on [REDACTED]. Gov't MJAR at 25 (citing AR Tab 39 at 900). LaQuay responded by "representing that it was in [REDACTED][.]" Gov't MJAR at 25–26 (citing AR Tab 59 at 2241). "LaQuay did not assert that [USTRANSCOM] was incorrectly interpreting or applying the [Solicitation.]" Gov't MJAR at 25. It was not irrational for USTRANSCOM to request additional information and documentation rather than accepting LaQuay's "bald statement" in the proposal. Gov't MJAR at 25.

USTRANSCOM did not act irrationally in issuing Evaluation Notice LAQ-0002. Gov't MJAR at 26. The Solicitation required two double hulled barge tows of not more than 25,000 barrels per barge that were not more than 12 years old. Gov't MJAR at 26 (citing AR Tab 37 at 862). Instead, USTRANSCOM determined that LaQuay's proposal did not provide evidence or documentation that the barges were [REDACTED]. Gov't MJAR at 26 (citing AR Tab 37 at 862). LaQuay represented its equipment had [REDACTED]. Gov't MJAR at 26 (citing AR Tab 37 at 862). But, USTRANSCOM's Evaluation Notice LAQ-0002 asked LaQuay to provide evidence or documentation that the barges were [REDACTED] and LaQuay complied. Gov't MJAR at 27 (citing AR Tab 39 at 91; AR Tab 60). Therefore, "it was not irrational for [USTRANSCOM] to ask LaQuay to provide documentation demonstrating that its barges were, in fact, [REDACTED] [.]" Gov't MJAR at 27.

USTRANSCOM did not act irrationally in issuing Evaluation Notice LAQ-0003. Gov't MJAR at 27. LaQuay's October 19, 2015 Proposal merely stated that the "[REDACTED]" and "[REDACTED]" without [REDACTED]. Gov't MJAR at 28. USTRANSCOM issued Evaluation Notice LAQ-0003, asking LaQuay to provide evidence or documentation substantiating these statements. Gov't MJAR at 28 (citing AR Tab 39). LaQuay responded [REDACTED]. Gov't MJAR at 28 (citing AR Tab 61). LaQuay argued that USTRANSCOM "should have assumed the systems were independent, based on general familiarity with the way those systems typically operate. But it was not irrational for the agency to engage in discussions with LaQuay to confirm the independence of the systems[.]" Gov't MJAR at 29.

USTRANSCOM did not act irrationally in issuing Evaluation Notice LAQ-0004. Gov't MJAR at 30. USTRANSCOM's Evaluation Notice LAQ-0004 asked LaQuay to describe and provide information on how LaQuay would comply with gauging operations and complete a vessel ullage report as required by PWS section 4.4.2 of the Solicitation. Gov't MJAR at 30 (citing AR Tab 39 at 903). LaQuay's October 19, 2015 Proposal did not identify [REDACTED]. Gov't MJAR at 30–31. LaQuay responded to the Evaluation Notice with [REDACTED]. Gov't MJAR at 31 (citing AR Tab 62). LaQuay argued that it was not required to identify the third-party gauging service provider, because the Solicitation did not specifically identify section 4.4.2, as requiring a narrative answer. Gov't MJAR at 31 (citing Pl. MMJAR at 32). Although the

Solicitation may not have required a narrative answer to section 4.4.2, the Solicitation did state that the proposals must "effectively demonstrate the offer's ability to comply with PWS paragraphs . . . 4.–5.5.2." Gov't MJAR (quoting AR Tab 16 at 190). "LaQuay's single-sentence statement in its proposal, parroting the language of the PWS [did] not [specify] in detail *how* it would meet the requirements of section 4.4.2[.]" Gov't MJAR at 31.

USTRANSCOM did not act irrationally in issuing Evaluation Notice LAQ-0005, because LaQuay's October 19, 2015 Proposal did not outline "managerial and supervisory ability of key personnel, operational controls, lines of authority, necessary staffing, customer service as required by [the] [S]olicitation." Gov't MJAR at 32 (quoting AR Tab 37 at 863). LaQuay responded to LAQ-0005 by submitting [REDACTED]. Gov't MJAR at 33 (citing AR Tab 63). "Whether LaQuay's narrative provided sufficient information to satisfy the [S]olicitation requirements . . . is the quintessential type of discretionary judgment exercised by the procuring agency[.]" Gov't MJAR at 33 (citing *Matt Martin Real Estate Mgmt. LLC v. United States*, 96 Fed. Cl. 106, 113 (2010)).

USTRANSCOM did not act irrationally in issuing Evaluation Notice LAQ-0006, because LaQuay's October 19, 2015 Proposal did not address insurance, as required by Section 1.5.1 of the Solicitation. Gov't MJAR at 33 (citing AR Tab 16 at 201; AR Tab 64). LaQuay responded by providing a certificate of insurance. Gov't MJAR at 34 (citing AR Tab 64). Therefore, USTRANSCOM did not act irrationally in engaging in discussions to determine whether LaQuay was able to comply with the terms of the Solicitation. Gov't MJAR at 34–35.

USTRANSCOM did not act irrationally in issuing Evaluation Notice LAQ-0007, because Section 4.5.2 of the Solicitation's PWS required a contractor to maintain contact with "the contracting officer's representative, consignors, consignees, and a Government quality surveillance representative, to ensure prompt and efficient cargo movement." Gov't MJAR at 35 (citing AR Tab 16 at 211–12). USTRANSCOM determined LaQuay's October 19, 2015 Proposal was Unacceptable, because it did not demonstrate how it would comply with Section 4.5.2 and issued an Evaluation Notice asking for this information. Gov't MJAR at 35 (citing AR Tab 37 at 864; AR Tab 37 at 906). Specifically, LaQuay's October 19, 2015 Proposal did not state [REDACTED]. Gov't MJAR at 35 (citing AR Tab 32 at 813). Instead, LaQuay responded by representing that the [REDACTED]. Gov't MJAR (citing AR Tab 65).

The Defendant-Intervenor added that LaQuay's responses to USTRANSCOM's Evaluation Notices materially changed LaQuay's October 19, 2015 Proposal. D.I. MJAR at 16.

### 3. The Court's Resolution.

As a threshold matter, if an award decision is challenged, because it was made without a rational basis, the trial court must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Impresa Construzioni Geom.*

18

*Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001) (citations and quotations omitted); *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1368–69 (Fed. Cir. 2009) ("We have stated that procurement decisions invoke highly deferential rational basis review . . . . Under that standard, we sustain an agency action evincing rational reasoning and consideration of relevant factors.") (citations omitted). Both LaQuay and the Government misconstrue the APA standard. Instead, the gravamen of this argument is whether USTRANSCOM's Evaluation Notices and determinations were arbitrary and capricious. If an award decision is challenged on the grounds that an agency acted in an arbitrary or capricious manner, the court may intervene "only in extremely limited circumstances." *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983). "Courts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

With respect to Evaluation Notice LAQ-0001, the Solicitation required 4 barges with an option to add 4 additional barges with a minimum of 15 days' notice. AR Tab 21 at 253–54. The Solicitation also required offerors to provide descriptions of the equipment that would "allow the Government to determine compliance with service requirements[.]" AR Tab 16 at 189. Accordingly, it was not arbitrary or capricious for USTRANSCOM to issue an Evaluation Notice, requesting specifications, certifications, and proof of ownership, or a lease agreement for the 4 additional barges. AR Tab 39 at 900. In addition, because the Solicitation specified that USTRANSCOM required an option for 4 additional barges, the Evaluation Notice did not improperly seek to evaluate proposals via unstated evaluation criteria. As such, USTRANSCOM did not violate FAR § 15.303(b)(4).

With respect to Evaluation Notice LAQ-0002, the Solicitation required all barges to be "double hulled." AR Tab 210 at 254. The Solicitation also required offerors to provide descriptions of the equipment that would "allow the Government to determine compliance with service requirements[.]" AR Tab 16 at 189. LaQuay's October 19, 2015 Proposal stated that [REDACTED]. AR Tab 32. Accordingly, it was not arbitrary or capricious for USTRANSCOM to issue Evaluation Notice LAQ-0002, requiring "evidence or supporting documentation that the barges offered are double hulled[.]" AR Tab 39 at 901. In addition, because the Solicitation specified that USTRANSCOM required barges to be double hulled, the Evaluation Notice did not improperly seek to evaluate proposals via unstated evaluation criteria. As such, USTRANSCOM did not violate FAR § 15.303(b)(4).

With respect to Evaluation Notice LAQ-0003, the Solicitation required barges to be equipped with a cargo pumping system, cargo tank stripping system, water stripping system, gauge point marks, and calibration charts. AR Tab 21 at 254–55. Moreover, the Solicitation stated that proposals "shall be clear, concise, and shall include sufficient detail for effective evaluation and for *substantiating* the validity of stated claims. The proposal should not simply rephrase or restate the [G]overnment's requirements but rather shall provide convincing rationale to address how the

offeror intends to meet these requirements." AR Tab 21 at 239 (emphasis added). LaQuay's October 19, 2015 Proposal stated that [REDACTED]. AR Tab 32 at 809–10. But, LaQuay did not provide any specifications or documentation to support their statement. AR Tab 32. Accordingly, it was not arbitrary or capricious for USTRANSCOM to issue Evaluation Notice LAQ-0003, requiring that LaQuay "adequately demonstrate/confirm that all offered barge equipment have Cargo Tank Stripping system(s) and Water Stripping system(s) 'independent' of the main cargo tank pumping system and that all offered barge equipment have trim correction tables and legible draft markings." AR Tab 39 at 902. In addition, because the Solicitation specified that USTRANSCOM required barges to be so equipped and because the Solicitation also required "[o]fferors [to] assume that the Government has no prior knowledge of their equipment facilities and experience," the Evaluation Notice did not improperly seek to evaluate proposals via unstated evaluation criteria. As such, USTRANSCOM did not violate FAR § 15.303(b)(4).

With respect to Evaluation Notice LAQ-0004, the Solicitation requires that the offeror be able to perform joint gauging of the vessel. AR Tab 21 at 261. LaQuay's October 19, 2015 Proposal [REDACTED]. AR Tab 32. Although the Solicitation did not specifically require offerors to provide a written narrative for gauging, AR Tab 21 at 241, the Solicitation required offerors to provide descriptions of the offeror's equipment that would "allow the Government to determine compliance with service requirements[.]" AR Tab 16 at 189. LaQuay's October 19, 2015 Proposal did not include [REDACTED]. AR Tab 32. Accordingly, it was not arbitrary or capricious for USTRANSCOM to issue Evaluation Notice LAQ-0004, requiring "information on how [the offeror] intends to comply with the gauging operations[.]" AR Tab 39 at 903. In addition, because the Solicitation specified that an offeror must be able to perform joint gauging, the Evaluation Notice did not improperly seek to evaluate proposals under unstated evaluation criteria. As such, USTRANSCOM did not violate FAR § 15.303(b)(4).

With respect to Evaluation Notice LAQ-0005, the Solicitation required proposals to include "a comprehensive document that outlines the company's concept of operations, to include its skills and capability to meet the requirements of this acquisition. The offeror must demonstrate managerial and supervisory ability of key personnel, operational controls, [and] *lines of authority*[.]" AR Tab 21 at 242 (emphasis added). LaQuay's October 19, 2015 Proposal stated that [REDACTED]. AR Tab 32 at 812. LaQuay's October 19, 2015 Proposal did not include an organizational chart or other documentation, demonstrating the skills and capabilities of the company. AR Tab 32. Accordingly, it was not arbitrary or capricious for USTRANSCOM to issue Evaluation Notice LAQ-0005, requiring "information on managerial and supervisory ability of key personnel, operational controls, lines of authority, necessary staffing, and customer service." AR Tab 39 at 904. In addition, because the Solicitation specified that it required a "comprehensive document" outlining management of operations, the Evaluation Notice did not improperly seek to evaluate proposals via unstated evaluation criteria. As such, USTRANSCOM did not violate FAR § 15.303(b)(4).

With respect to Evaluation Notice LAQ-0006, the Solicitation required cargo, liability, pollution, and environmental insurance. AR Tab 21 at 252. Although the Solicitation did not require a written narrative addressing these insurance requirements, the Solicitation did provide that proposals should "include sufficient detail for effective evaluation and for substantiating the

validity of stated claims." AR Tab 21 at 239. LaQuay's October 19, 2015 Proposal did not address insurance. AR Tab 32. Accordingly, it was not arbitrary or capricious for USTRANSCOM to issue Evaluation Notice LAQ-0006, requiring LaQuay to demonstrate "the ability to comply with the Cargo, Liability, Pollution, and Environmental Insurance requirements." AR Tab 39 at 905. In addition, because the Solicitation specified that it required offerors to have insurance, the Evaluation Notice did not improperly seek to evaluate proposals via unstated evaluation criteria. As such, USTRANSCOM did not violate FAR § 15.303(b)(4).

With respect to Evaluation Notice LAQ-0007, the Solicitation required offerors to be able to provide a written Notice of Readiness documentation "immediately upon the tow's arrival[.]" AR Tab 21 at 327. The Solicitation also stated that proposals "shall be clear, concise, and shall include sufficient detail for effective evaluation and for substantiating the validity of stated claims. The proposal should not simply rephrase or restate the [G]overnment's requirements but rather shall provide convincing rationale to address how the offeror intends to meet these requirements." AR Tab 21 at 239. LaQuay's October 19, 2015 Proposal stated that [REDACTED]." AR Tab 32 at 813. But, LaQuay's October 19, 2015 Proposal never demonstrated *how* it would provide documentation. AR Tab 32. Accordingly, it was not arbitrary or capricious for USTRANSCOM to issue Evaluation Notice LAQ-0007, requiring LaQuay "to adequately demonstrate how it intends to comply with the written Notice of Readiness." AR Tab 39 at 906. In addition, because the Solicitation specified that it required offerors to be able to provide a written Notice of Readiness documentation, the Evaluation Notice did not improperly seek to evaluate proposals via unstated evaluation criteria. As such, USTRANSCOM did not violate FAR § 15.303(b)(4).

With respect to LaQuay's contention that the October 19, 2015 Proposal and the January 5, 2016 Proposal were identical, and therefore USTRANSCOM's initial determination was arbitrary or capricious, the Administrative Record shows that the Source Selection Evaluation Board relied upon LaQuay's responses to the Evaluation Notices in determining that the January 5, 2016 Proposal was Acceptable. AR Tab 120 at 2705 ("T.W. LaQuay's response to the ENs [Evaluation Notices], along with associated proposal revisions, were determined to be [A]cceptable."). As such, USTRANSCOM "provided a coherent and reasonable explanation" for differentiating between LaQuay's October 19, 2015 Proposal and January 5, 2016 Proposal.

## IV.    CONCLUSION.

For reasons discussed herein, Plaintiff's May 3, 2016 Motion For Permanent Injunction and May 31, 2016 Motion For Judgment On The Administrative Record are denied. The Government's June 24, 2016 and Defendant-Intervenor's June 25, 2016 Cross-Motions For Judgment On The Administrative Record are granted. All other pending motions are denied as moot. Accordingly, the Clerk is directed to enter judgment on behalf of the Government and Defendant-Intervenor.

No costs.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**